IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD HERRINGTON-ROSE, and                     Case No. 3:13-cv-2155-SB
SANDY ROSE,

**FINDINGS AND**
Plaintiffs,                                      **RECOMMENDATION**

v.

JOSHUA EDMISTON, LEWIS MENGES, and
SALEM POLICE DEPARTMENT,

Defendants.

BECKERMAN, Magistrate Judge.

Richard Herrington-Rose ("Herrington-Rose") and Sandy Rose (husband and wife,

collectively "Roses") filed a First Amended Complaint against Joshua Edmiston ("Edmiston"),

Lewis Menges ("Menges"), and the Salem Police Department ("SPD"), alleging claims under both

federal and state law arising from Herrington-Rose's arrest on December 25, 2012. Specifically, the

Roses allege two claims against the named individuals pursuant to 42 U.S.C. § 1983 for violations

of Herrington-Rose's Fourth Amendment right to be free from an unreasonable seizure, and his

Page 1 - FINDINGS AND RECOMMENDATION

Fourteenth Amendment Right to due process. (First Am. Compl. ¶¶ 30-41.) Additionally, the Roses allege four state law claims against the SPD – two negligence counts, one claim for malicious prosecution, and a claim for intentional infliction of emotional distress ("IIED"). The Roses seek monetary relief in the form of economic and non-economic damages, including an award of punitive damages, and reasonable attorney fees and costs under 42 U.S.C. § 1988.

The individual defendants and the SPD filed a Motion for Summary Judgment seeking an entry of judgment against all of the Roses' claims. For the reasons set forth below, defendants' Motion for Summary Judgment should be granted in its entirety and the First Amended Complaint should be dismissed, with prejudice.

## I. FACTS AND PROCEDURAL HISTORY

On or about December 25, 2012, Herrington-Rose was arrested on charges of harassment, criminal mischief, and strangulation. (Joshua Edmiston Decl. Ex. 1 at 1, Feb. 6, 2015.) Prior to his arrest, Herrington-Rose was driving his truck in Salem, Oregon. Sandy Rose was in the front passenger seat and Bruce Honeycutt ("Honeycutt"), who is Sandy Rose's son and the alleged victim, was seated in the back seat along with Honeycutt's friends/roommates, Krista Gilchrist ("Gilchrist") and Nathan Slack ("Slack"). Honeycutt was seated behind the driver's seat. (Edmiston Decl. Ex. 1 at 3.)

While the parties agree there was an altercation between Herrington-Rose and Honeycutt that evening, there is much disagreement about the details surrounding the incident. Most fundamentally, the parties disagree about whether the aggressor/assailant was Herrington-Rose or Honeycutt. Below, the Court briefly recounts both versions of the events, as reported to Officers Edmiston and Menges.

Page 2 - FINDINGS AND RECOMMENDATION

Regardless, the material facts are only those contemporaneously known to the officers at the time they arrested Herrington-Rose.

In his version of the events, Herrington-Rose told the officers that Honeycutt began harassing him, including threatening him with bodily injury. Herrington-Rose pulled off the road and into a parking lot to let Honeycutt out of the vehicle. The truck's back doors cannot be opened unless the front doors are open. (Gerald Warren Decl. Ex. 1 (Deposition of Richard Herrington-Rose 30:24-25, Nov. 17, 2014 (hereinafter "Herrington-Rose Dep.")), Feb. 11, 2015.) At that point, Honeycutt allegedly struck Herrington-Rose repeatedly on the head from the back seat. Herrington-Rose struggled to open the door of the vehicle and, upon exiting the vehicle, Honeycutt continued hitting him. (R. Grant Cook Decl. Ex. 1 at 5, March 4, 2015.) Sandy Rose exited the front, passenger-side door of the vehicle and attempted to protect Herrington-Rose from Honeycutt. (Cook Decl. Ex. 1 at 5-6.) Sandy Rose positioned herself between Herrington-Rose and Honeycutt, but she also was struck on the arm by Honeycutt while trying to defend herself. Honeycutt then ran and jumped in front of a semi-truck, which swerved to avoid hitting him. (Cook Decl. Ex. 1 at 6.) During the altercation with Honeycutt, Herrington-Rose received a laceration to his head and his glasses were thrown to the ground by Honeycutt. (Edmiston Dep. 102:19-103:12.) Gilchrist and Slack exited the vehicle and, with Honeycutt, left the scene by foot in a southbound direction on Wallace Rd. (Cook Decl. Ex. 5 (Deposition of Joshua Edmiston 102:15-18, December 12, 2014 (hereinafter "Edmiston Dep.")).)

Honeycutt, on the other hand, reported to Officer Menges that Herrington-Rose was calling him derogatory names, based upon his sexual orientation, as they were returning from a Christmas party. (Menges Decl. ¶ 5.) Honeycutt responded with an insult toward Herrington-Rose and,

Page 3 - FINDINGS AND RECOMMENDATION

consequently, Herrington-Rose ordered him out of the truck. (Menges Decl. ¶ 5.) Herrington-Rose

got out of the vehicle, opened the back door, grabbed him by the shirt collar, and dragged him out

of the back seat. (Lewis Menges Decl. ¶ 6, Feb. 6, 2015.) Herrington-Rose purportedly grabbed

Honeycutt by his neck, so he could not breathe, and when his grip loosened, Herrington-Rose

punched Honeycutt in the stomach and face. (Menges Decl. ¶ 6; Edmiston Decl. ¶ 5.) Herrington-

Rose returned to the truck and left with Sandy Rose. At some point during the altercation, Slack and

Gilchrist got out of the truck. (Menges Decl. ¶ 6.)

　　　　Immediately following the altercation with Herrington-Rose, Honeycutt called 9-1-1 to

request emergency medical services and police. (Edmiston Decl. ¶ 4; Menges Decl. ¶ 3.) Officers

Edmiston and Menges responded to the emergency room at Salem Hospital where Honeycutt had

been taken by ambulance. (Edmiston Decl. ¶ 3; Menges Decl. ¶ 4.) Officer Menges interviewed

Honeycutt, who reported his version of events as set forth above.

　　　　While at the hospital, Officer Menges also interviewed Gilchrist. (Menges Decl. ¶ 11.)

Gilchrist stated Herrington-Rose was calling Honeycutt derogatory names in the truck, stopped the

vehicle at the apartment complex, dragged Honeycutt from the truck, and punched him in the face.

(Menges Decl. ¶ 11.) Officer Menges then interviewed Slack by telephone. (Menges Decl. ¶ 12.)

Similarly, Slack stated Herrington-Rose called Honeycutt derogatory names and struck him in the

face and the stomach. (Menges Decl. ¶¶ 11-12; Edmiston Decl. ¶ 7.)

　　　　At the hospital, Honeycutt complained of significant pain in his left jaw, right arm, and

stomach. (Menges Decl. ¶ 7-8; Edmiston Decl. ¶ 5.) Honeycutt's shirt was torn, he had a red mark

on his neck, and he also claimed that during the attack Herrington-Rose broke necklaces he was

wearing. (Menges Decl. ¶ 8-10; Edmiston Decl. ¶ 6.) Officer Menges stated in his declaration that he "observed [Honeycutt's] torn shirt and broken necklaces." (Menges Decl. ¶ 10.)

Officer Menges photographed Honeycutt's alleged injuries (Cook Decl. Ex. 6 (Deposition of Lewis Menges 30:20-31:6 (hereinafter "Menges Dep.") Exs. 8-10 thereto, Dec. 12, 2014).) Officer Menges reported Honeycutt had no visible injuries except for a slight red mark on the left side of his neck. (Menges Dep. 33:4-5.) Officer Edmiston stated it appeared Honeycutt's injuries were more serious than those of Herrington-Rose's injuries. (Edmiston Dep. 106:10-12 (Cook Decl. Ex. 5).) Herrington-Rose testified he was bleeding from his head due to an injury he sustained in the altercation, and he was examined and treated for his injury. (Herrington-Rose Dep. 56:18-57:25 (Cook Decl. Ex. 3).)

Based upon the report of the alleged victim, the statements by the corroborating witnesses, and the observable evidence, the officers determined there was probable cause to conclude Herrington-Rose committed three crimes: Harassment (domestic), Strangulation (domestic), and Criminal Mischief II. (Menges Decl. ¶ 13; Edmiston Decl. ¶ 8.) Nevertheless, Officer Edmiston continued to investigate, and he telephoned the Roses. (Edmiston Decl. ¶ 9). The Roses agreed to come to the SPD station and be interviewed. (Edmiston Decl. ¶ 9.) During his interview, Herrington-Rose stated he told Honeycutt to get out of the truck because Honeycutt was being disrespectful. (Edmiston Decl. ¶ 11.) He claimed Honeycutt attacked him from behind as he was opening the back door to the truck and Honeycutt struck him repeatedly on the head. (Edmiston Decl. ¶ 12.) While reciting these events, Herrington-Rose mimed his actions, but his body movements did not match his description of the incident (Edmiston Decl. ¶ 12.) For example, Herrington-Rose reenacted the scene by pushing in front of him, despite stating Honeycutt attacked him from behind. (Edmiston

Decl. ¶ 12.) Further, Herrington-Rose claimed he pulled over and told Honeycutt: "It's time for you to walk home." (Edmiston Decl. ¶ 11.) In contrast, Sandy Rose told Officer Edmiston that Honeycutt demanded to be let out of the truck. (Edmiston Decl. ¶ 17.) Officer Edmiston informed Herrington-Rose that his statement differed from Sandy Rose's statement, whereas Honeycutt's statements were corroborated by Slack and Gilchrist. (Edmiston Decl. ¶ 21.)

Herrington-Rose was arrested for harassment, criminal mischief, and strangulation, and the District Attorney instituted charges against Herrington-Rose. (Edmiston Decl. ¶ 22.) Months later, in April 2013, Honeycutt recanted his statement and claimed he lied to Officers Edmiston and Menges. The District Attorney dismissed the charges against Herrington-Rose. (Herrington-Rose Dep. 16:7-17:10.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All material facts are resolved in a light most favorable to the nonmoving party. *Id.* at 331. The court must accept all evidence and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. DISCUSSION

The individual officers and the SPD move for summary judgment on all five of Herrington-Rose's claims, for failure to state a claim as a matter of law. Additionally, the individual officers assert they are entitled to qualified and statutory immunity for their actions. While Herrington-Rose

Page 6 - FINDINGS AND RECOMMENDATION

opposes the request for summary judgment, he concedes judgment should be entered against his Fourteenth Amendment substantive due process claim. (Pl.'s Resp. 2, 16.)

A.     Fourth Amendment Claims

      *1.     Probable Cause*

      In Count One of his Second Claim for Relief (42 U.S.C. § 1983), Herrington-Rose contends Officers Edmiston and Menges violated his Fourth Amendment right against unreasonable seizure when they took him into custody, without probable cause, and transported him to the Polk County Jail.[1] (First Am. Compl. ¶¶ 30-32.) Herrington-Rose alleges the officers failed to investigate adequately the totality of the circumstances to determine probable cause. (Pl.'s Resp. 14.) Specifically, Herrington-Rose contends the officers failed to: (1) investigate the Roses' statements about Honeycutt's mental health; (2) corroborate Honeycutt's expression of pain with medical personnel; (3) account for the size and age difference between the alleged victim (Honeycutt) and the accused (Herrington-Rose); and (4) contact the Woodburn Police Department regarding Honeycutt's past conduct. (Pl.'s Resp. 14-15.) According to Herrington-Rose, such an investigation would have dissipated any probable cause relied upon by Officers Edmiston and Menges for his arrest. (Pl.'s Resp. 15.)

      Section 1983 provides a private right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege two essential elements: (1) a federal constitutional or

---

[1] While Sandy Rose is a named plaintiff in this action, she is unable, as a matter of law, to assert a Fourth Amendment claim. She does not allege that she was taken into custody, or otherwise detained. Fourth Amendment rights are personal rights and may not be asserted vicariously. *Alderman v. United States*, 394 U.S. 165, 174 (1969).

statutory right was violated; and (2) the alleged violation was committed by a person acting under the color of state law. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). There is no dispute the named individuals were acting under the color of state law. Rather, the parties disagree about whether Officers Edmiston and Menges violated Herrington-Rose's right to be free of an unreasonable seizure as protected by the Fourth Amendment.

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012). Probable cause exists if the arresting officers "had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime." *Maxwell v. Cnty. of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012) (citation and internal quotations omitted). Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is irrelevant to whether his actions were reasonable for Fourth Amendment purposes. *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007).

To establish probable cause, officers may not rely solely on an individual's claim that he was the victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). A sufficient basis of knowledge is established if the victim provides "facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator." *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979 (9th Cir. 2003). Finally, while evaluating probable cause is a highly fact-dependent issue, "whether a reasonable officer could have believed probable cause . . . existed to justify . . . an arrest is an essentially legal question that should

Page 8 - FINDINGS AND RECOMMENDATION

be determined by the district court at the earliest possible point in the litigation." *Id.* (quotations and citations omitted).

Officers Edmiston and Menges responded to a call of domestic violence between Honeycutt and Herrington-Rose. Honeycutt had been transported to a hospital via ambulance to receive treatment for his injuries. Subsequently, the officers arrested Herrington-Rose based upon the statements of Honeycutt, the alleged victim, and two corroborating witnesses, Slack and Gilchrist. Additionally, the officers observed that Honeycutt's shirt was torn and his necklaces were broken. Honeycutt also complained of severe pain, albeit a subjective complaint, and reported he could not breathe when Herrington-Rose's hands were around his neck. Officers Edmiston and Menges observed and photographed a red mark on Honeycutt's neck. In addition, Honeycutt, Gilchrist, and Slack similarly reported that Herrington-Rose called Honeycutt either a "faggot" or "slick faggot," and Herrington-Rose acknowledged he had called Honeycutt "slick."

In addition to corroborating the victim's statements by interviewing other witness to the altercation, prior to arresting Herrington-Rose, the two officers also interviewed both Sandy Rose and Herrington-Rose. Herrington-Rose's statement was both internally inconsistent and not corroborated by Sandy Rose's version of the altercation. For example, Herrington-Rose reenacted the scene by pushing in front of him, despite stating Honeycutt attacked him from behind. In addition, Herrington-Rose claimed he told Honeycutt: "It's time for you to walk home[,]" which conflicted with Sandy Rose's statement that Honeycutt demanded to be let out of the truck.

Herrington-Rose disputes several facts in this case, but they are not material to the officers' probable cause determination. A factual dispute regarding a victim's complaint at the scene of an alleged domestic disturbance will not defeat probable cause if: "1) the victim's statements are

Page 9 - FINDINGS AND RECOMMENDATION

sufficiently definite to establish a crime has been committed; and 2) the victim's complaint is corroborated by either the surrounding circumstances or other witnesses." *Peng*, 335 F.3d at 979. The requirements set forth in *Peng* are satisfied here. As to the first requirement, criminal strangulation is impeding the breathing or circulation of another by applying pressure to the other person's neck. *See State v. Bigsby*, 267 Or. App. 768, 769 (2014) (domestic strangulation). Criminal harassment occurs by subjecting another to offensive physical contact or publicly insulting a person by abusive words. OR. REV. STAT. § 166.065(1)(a). Honeycutt's recounting of the altercation established at least these two crimes. As set forth above, Honeycutt's version was corroborated by *both* the surrounding circumstances and other witnesses. The officers were presented with statements by Honeycutt and both of his housemates, who reported Herrington-Rose attacked Honeycutt verbally and physically. While Herrington-Rose disputes Honeycutt's version of the events, he concedes calling Honeycutt "slick" and that there was a physical altercation between the two men. There is no dispute that Honeycutt, not Herrington-Rose, called 9-1-1 for both medical attention and to report the incident. That Herrington-Rose disputes Honeycutt's, Slack's, and Gilchrist's version of the events to Officers Edmiston and Menges does not defeat a finding of probable cause, which "exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." *Peng*, 335 F.3d at 976. Here, Honeycutt's statements were sufficiently definite to establish a crime had been committed, and were corroborated by the housemate witnesses, the physical evidence (the red mark on his neck, his torn shirt, and his broken necklaces), and the fact that he sought medical attention.

Page 10 - FINDINGS AND RECOMMENDATION

Herrington-Rose's efforts to direct this Court's focus on Honeycutt's alleged wrongful past conduct is misplaced. The relevant inquiry is whether, at the time of the arrest, Officers Edmiston and Menges had probable cause to believe Herrington-Rose committed the crimes for which he was charged. The officers observed Honeycutt and did not conclude that he was under the influence of drugs or mentally impaired the night of the altercation. Officer Edmiston's recollection that "Honeycutt did not exhibit any behavior consistent with either drug use or mental health disorders when I observed him earlier that day during Officer Menges's interview at the hospital[,]" is not disputed. (Edmiston Decl. ¶ 18.) As Officer Edmiston testified: "Just because they have mental illness doesn't mean they can't be telling the truth." (Edmiston Dep. 50:1-2.) Further, contrary to Herrington-Rose's suggestion, the officers could not have performed a criminal history check on Honeycutt without cause, which was not present in this case. (Edmiston Decl. ¶ 19.) There is no authority to suggest that a law enforcement officer must review the mental health record of an alleged crime victim, or conduct a criminal history background investigation, before making a probable cause determination.

Although Officers Edmiston and Menges may have been able to elicit a more complete picture of the situation by continuing their investigation or confronting Honeycutt with Herrington-Rose's accusations, the probable cause inquiry deals only with the facts actually known to the officers. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). Prior to arresting Herrington-Rose, the two named officers interviewed all of the witnesses to the altercation, including the victim and the accused. The officers interviewed Honeycutt in person and were thus able to make their own assessment about his credibility.

Page 11 - FINDINGS AND RECOMMENDATION

Herrington-Rose was provided an opportunity to respond to Honeycutt's accusations. All participants agreed "name calling" and a physical altercation had occurred, with the victim and two witnesses recounting corroborating versions of the events. Further, there was physical evidence to support Honeycutt's allegations. Based upon the totality of the circumstances, the officers had probable cause to arrest Herrington-Rose.

      2.    *Statutory Immunity*

      The totality of the circumstances known to Officers Edmiston and Menges must also be considered in light of the fact this was an incidence of domestic violence. Domestic disturbances involve a "great potential danger to occupants of the household" and if "an officer hesitates to act, his hesitancy may lead to the occurrence of otherwise preventable violence." *Peng*, 335 F.3d at 977. The Oregon Legislature recognized the danger of the "widespread refusal or failure of police officers to remove persons involved in episodes of domestic violence" by passing a mandatory arrest law in certain domestic violence situations. *Nearing v. Weaver*, 295 Or. 702, 709 (1983). Although "the arrested person is entitled to be released pending an eventual adjudication of a criminal charge[,]" the Oregon Legislature passed these statutes to require the arrest and custody for the temporary removal of the alleged or potential assailant. *Id.* These statutes "are unique among statutory arrest provisions because the legislature chose mandatory arrest as the best means to reduce recurring domestic violence." *Id.* at 712.

      Thus, in Oregon, when an officer has probable cause to believe an assault has occurred between family members, an arrest is mandated. OR. REV. STAT. § 133.055(2)(a) ("the officer shall arrest and take into custody the alleged assailant or potential assailant"). "As used in this subsection, 'assault' includes conduct constituting strangulation under ORS 163.187." OR. REV. STAT. §

133.055(2)(d). The mandatory arrest statute also provides immunity for the officers making the arrest, provided they acted in good faith and without malice: "No peace officer shall be held criminally or civilly liable for making an arrest pursuant to ORS 133.055(2) or 133.310(3) or (5) provided the peace officer acts in good faith and without malice." OR. REV. STAT. § 133.315(1); *see also Kelly v. City of Portland*, 3:09-CV-1125-KI, 2010 WL 4683850, at *5 (D. Or. 2010) (statutory requirements resulted in immunity from plaintiff's Fourth Amendment claim). The officers contend they are entitled to immunity from Herrington-Rose's claims here.

Herrington-Rose responds that § 133.055(2)(c) requires that, prior to an arrest under § 133.055(2)(a), officers consider certain enumerated factors in determining who is the assailant or potential assailant. Specifically, the officers are to consider the "comparative extent of the injuries inflicted;" any "history of domestic violence between the persons involved;" if "the alleged crime was committed in self-defense;" and a "potential for future assaults[.]" OR. REV. STAT. § 133.055(2)(c). Applying these factors here, the only objective evidence before the Court regarding the parties' respective injuries is that Honeycutt immediately sought medical attention and there was a red mark on his neck. Herrington-Rose had a small cut on his head for which he sought treatment, but only after the fact. It was Officer Edmiston's conclusion that Honeycutt's injuries were more serious than those of Herrington-Rose. Next, there is no evidence before the Court regarding a prior history of domestic violence between the two men. In fact, Sandy Rose testified that prior to this event, Honeycutt had never been physically violent with Herrington-Rose. (Sandy Rose Dep. 29:21-23.) Third, while Herrington-Rose does contend it was Honeycutt who instigated the altercation, the officers weighed all of the evidence and determined Herrington-Rose was the perpetrator. Finally, there is no evidence in the record concerning the potential for future assaults. Although the two men

Page 13 - FINDINGS AND RECOMMENDATION

do not live in the same household, they are family members and § 133.055(2)(a) is directed to the protection of family members. *See* OR. REV. STAT. § 133.055(2)(a). Consequently, the four factors set forth in § 133.055(2)(c) support the officers' arrest of Herrington-Rose.

Oregon law expressly mandates an arrest for the strangulation alleged by Honeycutt, the dispute occurred between family members, and Herrington-Rose was the *alleged* or *potential* assailant or, at a minimum, one of the *alleged* or *potential* assailants. *See Kelly,* 2010 WL 4683850, at *1 (responding officers arrested both people involved; one had minor scratches and the other had no visible injuries). Under these circumstances, Officers Edmiston and Menges were required by law to arrest Herrington-Rose. Thus, Herrington-Rose's Fourth Amendment claim fails because there was probable cause for his arrest *and* because Officers Edmiston and Lewis are entitled to immunity from this action under OR. REV. STAT. § 133.315(1). Accordingly, the individual officers' request for summary judgment on Herrington-Rose's Fourth Amendment claim (Count One of the Second Claim for Relief), should be granted.[2]

B.      State Law Claims

    *1.      Malicious Prosecution*

In his First Claim for Relief – Malicious Prosecution – Herrington-Rose contends the SPD employed Officers Edmiston and Menges, and that those officers "did knowingly and without probable cause, arrest [Herrington-Rose] and transport him to Polk County Jail." (First Am. Compl. ¶¶ 26-27.) Further, that arrest "led directly to the malicious prosecution of [Herrington-Rose] for harassment, criminal mischief, and strangulation." (First Am. Compl. ¶ 27.) Subsequently, the

---

    [2] In light of the Court's finding that both probable cause and immunity existed for the arrest, the Court need not reach the individual defendants' claim of qualified immunity.

Page 14 - FINDINGS AND RECOMMENDATION

District Attorney dismissed the charges against Herrington-Rose "based on information which was available to Defendants at the time of the investigation and arrest." (First Am. Compl. ¶ 27.) Finally, Herrington-Rose asserts the primary purpose for the arrest and initiation of the prosecution was to "assert . . . dominance" over Herrington-Rose. (First Am. Compl. ¶ 27.)

Under Oregon law, the elements of a claim for wrongful initiation of a civil proceeding are (1) commencement and prosecution by defendant of a judicial proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) absence of probable cause to prosecute the action; (4) existence of malice; and (5) damages. *Pereira v. Thompson*, 230 Or. App. 640, 674-75 (2009).

As set forth above, Officers Edmiston and Menges had probable cause to arrest Herrington-Rose. Accordingly, Herrington-Rose is unable, as a matter of law, to establish a claim for malicious prosecution. *See, e.g., Mateo v. City of Portland*, No. 3:13-cv-00180-KI, 2014 WL 4384595, \*9 (D. Or. Sept. 3, 2014) ("Probable cause is a complete defense to a false arrest or imprisonment claim and to a malicious prosecution claim."); *Picray v. Duffitt*, No. 6:12-cv-00944-MC, 2014 WL 715519, \*10 (D. Or. Feb. 24, 2014) ("Probable cause, as 'a complete defense to [this] action,' precludes plaintiff's claim." (citation omitted)). Consequently, the SPD's request for summary judgment on Herrington-Rose's state law claim for malicious prosecution (First Claim for Relief), should be granted.

2.     *IIED*

In his Fourth Claim for Relief – IIED – Herrington-Rose contends the SPD knew the actions of Officers Edmiston and Menges "would cause severe mental or emotional distress" or, alternatively, the SPD "acted despite a high degree of probability that mental or emotional distress

Page 15 - FINDINGS AND RECOMMENDATION

would result." (First Am. Compl. ¶ 50.) Further, the SPD's conduct was "unreasonable, extreme, and shocking under the circumstances." (First Am. Compl. ¶ 50.)

Under Oregon law, to establish a claim for IIED plaintiff must show: (1) defendant intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; (2) defendant engaged in outrageous conduct, *i.e.*, conduct extraordinarily beyond the bounds of socially tolerable behavior; and (3) defendant's conduct in fact caused plaintiff severe emotional distress. *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995). "Because proof of intent is often indirect and evidence of psychic harm is usually self-serving, proof of this tort largely turns on the second element, whether a defendant's conduct is sufficiently outrageous." *House v. Hicks*, 218 Or. App. 348, 358 (2008).

Oregon law identifies "several contextual factors that guide the court's classification of conduct as extreme and outrageous." *House*, 218 Or. App. at 360. The most important of these factors is "whether a special relationship exists between a plaintiff and a defendant, such as . . . [a] government officer-citizen, that shapes the interpersonal dynamics of the parties." *Id.* This type of special relationship "'imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers.'" *Id.* (quoting *McGanty*, 321 Or. at 547-48).

Even assuming a special relationship existed between Officers Edmiston/Menges and Herrington-Rose, the officers had probable cause to arrest Herrington-Rose. Beyond his arrest and subsequent charges, Herrington-Rose does not allege any other "outrageous" conduct by the officers. Accordingly, Herrington-Rose is unable, as a matter of law, to show the officers' actions in arresting him were outrageous or beyond the bounds of socially tolerable conduct. Consequently, the SPD's

Page 16 - FINDINGS AND RECOMMENDATION

request for summary judgment on Herrington-Rose's state law claim for IIED (Fourth Claim for Relief), should be granted.

> 3.    *Negligence*

Herrington-Rose alleges two counts of negligence against the SPD in his Third Claim for Relief. In Count One, Herrington-Rose charges that the officers lacked probable cause for the arrest and that such a failure "rose to a level of gross negligence." (First Am. Compl. ¶ 43.) This claim fails as a matter of law because the Court found there was probable cause for the arrest. Accordingly, the SPD's request for summary judgment on Herrington-Rose's negligence claim for lack of probable cause (Count One of the Third Claim for Relief), should be granted.

In Count Two, Herrington-Rose alleges a claim for negligence grounded in the SPD's failure "to maintain and/or follow adequate and proper policies and procedures." (First Am. Compl. ¶ 46.) Specifically, Herrington-Rose asserts either the SPD did not have a policy or procedure in place or, alternatively, it failed to "properly follow" those policies and procedures. (First Am. Compl. ¶ 47.)

Under Oregon law, liability for negligence depends upon whether defendant's conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17 (1987). To prove a claim for negligence, plaintiff must establish:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Solberg v. Johnson,* 306 Or. 484, 490-91 (1988) (citing *Fazzolari*, 303 Or. 1). *See also Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 777 (9th Cir. 2002) (applying

Page 17 - FINDINGS AND RECOMMENDATION

the Oregon negligence elements to determine that defendant was not liable to victim). Here, the Court has already determined that the officers had probable cause to arrest Herrington-Rose. Accordingly, the Court has determined that defendants acted reasonably under the circumstances, and Herrington-Rose cannot prove the elements of a negligence claim. Consequently, the SPD's request for summary judgment on Herrington-Rose's state law claim for negligence (Count Two of the Third Claim for Relief), should be granted.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF. No. 20) should be GRANTED. Accordingly Herrington-Rose's First Amended Complaint should be DISMISSED in its entirety and JUDGMENT should be entered in favor of the individual officers and the SPD.

## V. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 27th day of May, 2015.

STACIE F. BECKERMAN
United States Magistrate Judge

Page 18 - FINDINGS AND RECOMMENDATION